UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TIMOTHY DAVIS

    Petitioner,

v.                                    Case No. 8:10-cv-746-T-23TBM

SECRETARY, Department of Corrections,

    Respondent.
_____/

## O R D E R

Timothy Davis petitions for the writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1) and challenges the validity of his six state convictions for aggravated assault, aggravated assault on a law enforcement officer, felonious possession of a firearm, armed burglary, possession of cocaine, and obstructing or resisting an officer with violence. Davis alleges both a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and a violation of his right to a speedy trial. Numerous exhibits ("Respondent's Exhibit __") support the response. (Doc. 12)

## FACTS[1]

Jason Fernandez parked his car in front of a convenience store. After a purchase in the store, he returned to his car and found Davis leaning against the driver's side door. Davis offered to sell drugs to Fernandez who agreed to purchase

---

[1] This factual summary derives from Davis's brief on direct appeal. (Respondent's Exhibit 4)

marijuana. Davis asked Fernandez to show him the money and Fernandez asked Davis to show him the marijuana. After a brief argument, Davis lifted his shirt, showed Fernandez a gun, and ordered Fernandez to give him the cash. Fernandez gave Davis twenty dollars. When Davis demanded more cash, Fernandez went inside the store to call the police. While Fernandez was inside the store, Davis entered Fernandez's car and rummaged through the contents. Davis eventually left on foot, walked about a block to the apartment of Raymond Braxton, and knocked on the door. Braxton looked through a window and saw Davis with a gun in his hand. Davis demanded to enter the apartment. Braxton called the police.

St. Petersburg police officers Joseph Tussey and Jacob Palmerton responded to the convenience store. While there, the officers received information that Braxton had called the police to report that a man was at his door with a gun. Officers Tussey and Palmerton walked to Braxton's apartment. Upon arrival the officers observed a man matching Davis's description sitting on a chair on the second floor landing of the apartment building. As the officers approached, the man, later identified as Davis, kicked in the door to the apartment building and fled down the stairs. Officers Tussey and Palmerton separated in an effort to catch Davis. As Officer Palmerton approached him, Davis raised a gun and fired at Officer Palmerton. Davis fled but was later apprehended. In a post-arrest search of Davis, the police recovered a pipe containing cocaine residue. Fernandez and the convenience store clerk subsequently

identified Davis as the person invovled in the incident at the store, and Officer Palmerton identified Davis as the man who fired the gun at him.

## I.     PROCEDURALLY BARRED GROUND

**Ground Two**

Sanders alleges that the trial court erred by allowing a delay of almost two years between the filing of the information and the beginning of trial. He argues that the delay resulted in a denial of his right to a speedy trial, his right to due process, and his right to equal protection.

The state post-conviction court summarily rejected this ground in Davis's Rule 3.850 motion (Respondent's Exhibit 7, Order Denying in Part Defendant's Motion for Post-conviction Relief, p. 3) (court's record citation omitted):

> The Defendant alleges that he was initially charged by felony information dated August 31, 2004, that he did not waive his rights to a speedy trial, and instead told his trial counsel to demand a speedy trial after his July 2005 trial date was continued. The Defendant further alleges that his trial did not take place until August 14, 2006. Accordingly, the Defendant alleges that his right to a speedy trial was violated by this court when he was tried two years after the initial felony information was filed.
>
> The record shows that speedy trial was waived by the Defendant on October 15, 2004. Moreover, any claims alleging that this court erred are not cognizable under Rule 3.850. *See* Florida Rule of Criminal Procedure 3.850(c); *Baker v. State*, 878 So. 2d 1236 (Fla. 2004) (finding claims procedurally barred which, if properly preserved, could have been raised on direct appeal); *Cook v. State*, 792 So. 2d 1197 (Fla. 2001). Likewise, procedural errors cannot be raised in a motion pursuant to Rule 3.850. *See Troedel v. State*, 479 So. 2d 736 (Fla. 1985) ("Not having been argued on appeal or not having been preserved for appeal by motion or objection at trial, procedural errors which allegedly occurred in [a] defendant's prosecution . . . were foreclosed from consideration and were not cognizable by motion to vacate, set aside, or correct

> judgment and sentence under Rule 3.850."); *Walburg v. State*, 644 So. 2d 608 (Fla. 1st DCA 1994) ("Allegation that defendant was denied his right to [a] speedy trial presented [an] issue that could or should have been raised on direct appeal and thus was improper to raise in [a] post-conviction relief motion."). Accordingly, this claim is denied.

The failure to adhere to a state procedural rule governing the proper presentation of a claim generally bars federal review of that claim in a subsequent federal habeas corpus proceeding. *See Coleman v. Thompson*, 501 U.S. 722 (1991); *Wainwright v. Sykes,* 433 U.S. 72, 97 (1977); *Sims v. Singletary,* 155 F.3d 1297, 1311 (11th Cir. 1998). "However, a state court's rejection of a federal constitutional claim on procedural grounds will only preclude federal review if the state procedural ruling rests upon [an] 'independent and adequate' state ground." *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001). A state court's procedural ruling constitutes an independent and adequate state rule of decision if (1) the last state court rendering a judgment in the case clearly and expressly states that it is relying on a state procedural rule to resolve the federal claim without reaching the merits of the claim, (2) the state court's decision rests solidly on state law grounds and is not intertwined with an interpretation of federal law, and (3) the state procedural rule is not applied in an "arbitrary or unprecedented fashion," or in a "manifestly unfair manner." *Judd*, 250 F.3d at 1313 (citing *Card v. Dugger*, 911 F.2d 1494 (11th Cir. 1990)).

The state post-conviction court's express reliance upon an independent and adequate state procedural bar to reject Davis's substantive ground and the state appellate court's affirmance of that bar preclude federal review. *Harris v. Reed*, 489

U.S. 255, 262 (1989). *See also Harmon v. Barton*, 894 F.2d 1268, 1274 (11th Cir. 1990) (finding that the state appellate court's *per curiam* affirmance of the lower court's ruling explicitly based on procedural default is a clear and express statement of its reliance on an independent and adequate state law ground barring federal review). As a consequence, ground two is procedurally defaulted.

Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). *See also Murray v. Carrier*, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimension. *United States v. Frady*, 456 U.S. 152 (1982). In other words, he must show at least a reasonable probability of a different outcome. *Henderson*, 353 F.3d at 892; *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

A petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if review is necessary to correct a

fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Carrier*, 477 U.S. at 495-96. A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson*, 353 F.3d at 892. This exception requires a petitioner's "actual" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error. *Schlup*, 513 U.S. at 327.

Davis fails to demonstrate cause and prejudice excusing his default. *Carpenter*, 529 U.S. at 451; *Carrier*, 477 U.S. at 495-96. He neither alleges nor shows that the fundamental miscarriage of justice exception applies. *Henderson*, 353 F.3d at 892. Because Davis fails to proffer specific facts showing an exception to procedural default, ground two is procedurally barred from federal review.

**II. MERITS**

Davis's remaining ground, which alleges a *Brady* violation, is exhausted and entitled to review on the merits.

### Standard of Review

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied*, 531 U.S. 840 (2000). Section 2254(d), which creates a highly

deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied--the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). "As a condition for

obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, ___ U.S. ___, 131 S. Ct. 770, 786-87 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Cone*, 535 U.S. at 693. A federal court must afford due deference to a state court's decision. "AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, ____ U.S. ____, 130 S. Ct. 1855, 1866 (2010). *See also Cullen v. Pinholster*, ___ U.S. ___, 131 S. Ct. 1388, 1398 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

In a *per curiam* decision without a written opinion the state appellate court on direct appeal affirmed Davis's convictions and sentences. (Respondent's Exhibit 5) The state appellate court's *per curiam* affirmance warrants deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002), *cert. denied sub nom Wright v. Crosby*, 538 U.S. 906 (2003). *See also Richter*, 131 S. Ct. at 784-85 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

Review of the state court decision is limited to the record that was before the state court.

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time, i.e., the record before the state court.

*Pinholster*, 131 S. Ct. at 1398. Davis bears the burden of overcoming by clear and convincing evidence a state court factual determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and

- 9 -

convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001). The state court's rejection of Davis's post-conviction claim warrants deference in this case.

**Ground One**

After Davis's arrest, a police forensic technician swabbed Davis's hands for evidence of gunshot residue.[2] Davis contends that the prosecutor committed a *Brady* violation by not disclosing to the defense both the chain of custody form associated with the testing kit and the result of the test. Davis claims that, because the prosecutor did not introduce into evidence during the trial the result of the gunshot residue test, "[i]t is reasonable to conclude that the gunshot residue test came back [n]egative and this is why the prosecutor . . . withheld this evidence from the defense." (Doc. 1, p. 5) Davis argues that the prosecutor's failure to disclose the test result prejudiced his defense.

The state post-conviction court rejected this ground in Davis's Rule 3.850 motion (Respondent's Exhibit 7, Final Order Denying Defendant's Motion for Post-conviction Relief, pp. 2-3) (court's record citations omitted):

---

[2] Forensic technician Michael Deubel testified at trial that he swabbed Davis's hands to test for gunshot residue. (Respondent's Exhibit 2, Vol. II, pp. 114-15) Neither Deubel nor any other prosecution witness testified that the swabs were actually tested for gunshot residue. Trial counsel in his closing argument highlighted for the jury that "[t]here was no evidence presented that the gun[shot] residue test that was conducted on Mr. Davis came back positive." (Respondent's Exhibit 7, State's Response to Order to Show Cause, Ex. 2)

- 10 -

> The Defendant alleges that the State violated his due process rights under *Brady v. Maryland*, [373] U.S. 83 (1963), by failing to disclose to him the results of the gunshot residue test performed on the Defendant by police officers. The Defendant alleges that the results of the gunshot residue test are material evidence and would prove that he did not shoot at Officer Palmerton as charged in count two and could be used to impeach Officer Palmerton's trial testimony.
>
> The elements of a facially sufficient claim of a *Brady* violation are "'[1] the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; [2] that evidence must have been suppressed by the State, either willfully or inadvertently; and [3] prejudice must have ensued.' Under the prejudice prong, the Defendant must show that the suppressed evidence is material." *Reed v. State*, 875 So. 2d 415, 430 (Fla. 2004) [(]quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)[)].
>
> In its response the State correctly points out that the Defendant fails to establish that he did not know that a gunshot residue test had been performed, that there was an examination of the test swabs, that test results were produced, or that he suffered prejudice. The Defendant clearly was aware prior to trial that the gunshot residue test had been performed on his body since he does not claim that he was unconscious or incapacitated when the test was performed. *See Occhicone v. State*, 768 So. 2d 1037, 1042 (Fla. 2000). In addition, during the deposition of Detective Billy Crews, taken by the Defendant's counsel, the possibility that a gunshot residue had been performed was discussed. As both the Defendant and his trial counsel were aware of the test prior to trial, there can be no prejudice even if Defendant was not provided the results of the test. *Lynch v. State*, 33 Fla. L. Weekly S880, 2008 WL 4809783 (Fla. November 6, 2008).
>
> Moreover, the Defendant fails to allege that the allegedly suppressed evidence exists. The record suggests that an examination of the test swabs may not have been performed and test results may not have been produced. Finally, the Defendant cannot show prejudice because his trial counsel argued to the jury that the lack of test results indicated a negative result. Therefore, presenting the results of the test, if they existed, would not have made any significant difference in the argument.

*Brady*, 373 U.S. at 87, holds that a prosecutor's failure to disclose evidence favorable to a defendant violates due process if the evidence is material to either guilt or punishment. *Strickler v. Greene*, 527 U.S. 263, 280 (1999). To establish a *Brady*

violation, a defendant must prove (1) that the prosecutor possessed evidence favorable to the defense, (2) that the defendant did not possess the evidence and could not obtain it with any reasonable diligence, (3) that the prosecutor suppressed the evidence, and (4) that a reasonable probability exists that the outcome of the proceeding would have been different if the prosecutor had disclosed the evidence to the defense. *United States v. Schier*, 438 F.3d 1104, 1106, n.1 (11th Cir. 2006) (citing *Moon v. Head*, 285 F.3d 1301, 1308 (11th Cir. 2002)).

Davis provides no evidence establishing either that the swabs from the gunshot residue test were tested or, if the swabs were tested, that the result was negative. Davis cannot sustain his *Brady* claim because he establishes neither that the prosecutor possessed evidence favorable to the defense nor that the prosecutor suppressed either exculpatory evidence or evidence that could have been used for impeachment. Ground one warrants no relief. *See United States v. Schier*, 438 F.3d at 1106, n.1.

Accordingly, Davis's petition for the writ of habeas corpus (Doc. 1) is **DENIED**. The clerk shall enter a judgment against Davis and close this action.

### DENIAL OF BOTH A CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Davis is not entitled to a certificate of appealability ("COA"). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue

a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a COA, Davis must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001).

Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Davis cannot meet *Slack's* prejudice requirement. 529 U.S. at 484. Finally, Davis is not entitled to appeal *in forma pauperis* because he is not entitled to a COA.

Accordingly, a certificate of appealability is **DENIED**. Leave to proceed *in forma pauperis* on appeal is **DENIED**. Davis must pay the full $455 appellate filing fee without installments unless the circuit court allows Davis to proceed *in forma pauperis*.

ORDERED in Tampa, Florida, on February 28, 2013.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE